## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S,** | * | |
| **LONDON SEVERALLY SUBSCRIBING** | * | **CIVIL ACTION** |
| **TO CERTIFICATE NO. AMR-73525;** | * | **NO.** |
| **INDIAN HARBOR INSURANCE COMPANY;** | * | |
| **QBE SPECIALTY INSURANCE COMPANY;** | * | |
| **STEADFAST INSURANCE COMPANY;** | * | **JUDGE:** |
| **GENERAL SECURITY INDEMNITY** | * | |
| **COMPANY OF ARIZONA; UNITED** | * | |
| **SPECIALTY INSURANCE COMPANY;** | * | |
| **LEXINGTON INSURANCE COMPANY;** | * | **MAGISTRATE JUDGE:** |
| **HDI GLOBAL SPECIALTY SE; OLD** | * | |
| **REPUBLIC UNION INSURANCE COMPANY;** | * | |
| **GEOVERA SPECIALTY INSURANCE** | * | |
| **COMPANY; TRANSVERSE SPECIALTY** | * | |
| **INSURANCE COMPANY** | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **BELMONT COMMONS L.L.C. D/B/A 925** | * | |
| **COMMON AND BELMONT DELAWARE** | * | |
| **L.L.C** | * | |

### COMPLAINT TO COMPEL ARBITRATION
### AND SUPPORTING MEMORANDUM OF LAW

NOW COME Petitioners, Certain Underwriters at Lloyd's, London subscribing to Policy No. AMR-73525 ("Lloyds Underwriters"), Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE ("HDI"), Old Republic Union Insurance Company, GeoVera Specialty Insurance Company, Transverse Specialty Insurance Company (collectively hereinafter "Insurers"), who petition this Honorable Court to enforce the binding Arbitration Agreement of the subject policy of insurance and compel the insureds, Belmont Commons L.L.C. and Belmont Delaware, L.L.C.

(collectively hereinafter "Belmont"), to participate in arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").

## SUMMARY OF THE ARGUMENT

### I.

A.   All disputes arising from the Account Policy are subject to the Arbitration Agreement and fall under the Convention.

B.   The Arbitration Agreement's Delegation Clause refers all claims, including those regarding bad faith, to arbitration.

C.   Belmont has alleged interrelated and concerted misconduct among all Insurers, foreign and domestic, and is equitably estopped from dodging arbitration with the domestic Insurers.

D.   Belmont issued a putative "Demand for Arbitration," which did not conform to the requirements of the Account Policy or the Arbitration Agreement, but has effectively retracted that demand by stating that it contests the enforceability of the Arbitration Agreement and requiring this Court's resolution of this dispute.

## THE PARTIES

### II.

The Insurers, comprising 100% of the insurance market subscribing to and participating in the subject policy of insurance bearing Account No. 840553 ("Account Policy"), are:

A.   Certain Underwriters at Lloyd's, London subscribing to Policy No. AMR-73525 ("Lloyds Underwriters"), are comprised of syndicates that are principally citizens of countries other than the United States, such as the United Kingdom of Great Britain, including:

- Syndicate 2987, is an unincorporated association, the managing agent of which is Brit Syndicates Limited, and the sole corporate member is Brit UW Limited,

registered in England and Wales, with its principal place of business in London, England.

- Tokio Marine Kiln Syndicate 510, is an unincorporated association, the managing agent of which is Tokio Marine Kiln Syndicates Limited, and the majority corporate member is Tokio Marine Kiln Group Limited, registered in England and Wales, with its principal place of business in London, England.

B. Indian Harbor Insurance Company is a Delaware corporation with its principal place of business in Stamford, Connecticut.

C. QBE Specialty Insurance Company is a North Dakota corporation with its principal place of business in the state of New York.

D. Steadfast Insurance Company is a Delaware corporation with its principal place of business in Illinois.

E. General Security Indemnity Company of Arizona is an Arizona corporation with its principal place of business in the state of New York.

F. United Specialty Insurance Company is a Delaware corporation with its principal place of business in the state of Texas.

G. Lexington Insurance Company is a surplus lines company organized under Delaware law with its principal place of business in Massachusetts.

H. HDI Global Specialty SE is registered under the law of Germany, with its principal place of business in Germany.

I. Old Republic Union Insurance Company is an Illinois company with its principal office in Chicago, Illinois.

J. GeoVera Specialty Insurance Company is a Delaware corporation with its principal place of business in California.

K.  Transverse Specialty Insurance Company is a Delaware corporation with its principal place of business in New Jersey.

### III.

Belmont Commons, L.L.C. is a limited liability company formed under the laws of Louisiana.  However, its citizenship is determined by the citizenship of its members.  On information and belief, its members are Emmanuel Organek and Marc Blumberg, who are, respectively, citizens of Florida and Georgia.

### IV.

Belmont Delaware, L.L.C. is a limited liability company formed under the laws of Delaware.  However, its citizenship is determined by the citizenship of its members.  On information and belief, its sole member is Belmont Commons, L.L.C., a limited liability formed under the laws of Louisiana, whose members are Emmanuel Organek and Marc Blumberg, respectively, citizens of Florida and Georgia.

### JURISDICTION AND VENUE

### V.

The Arbitration Agreement giving rise to this Complaint falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention").   The United States ratified the Convention in 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *reprinted following,* 9 U.S.C. § 201 (West Supp. 1998).   Accordingly, this Court has original jurisdiction under 9 U.S.C. §§ 202, 203 and 205, and 28 U.S.C. § 1331.

### VI.

Venue in this case is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2), because this suit concerns an alleged loss of real and personal property located in this judicial district.

## FACTUAL SUMMARY

### *Belmont's Claim And*
### *The Adjustment Thereof*

### VII.

This Complaint arises from Belmont's claim against the Insurers for damage to a property located in New Orleans, Louisiana, allegedly caused by Hurricane Ida, on or about August 29, 2021.

### VIII.

On or about August 30, 2021, Belmont reported the alleged loss to the Insurers, collectively. (Exhibit "A": Notice of Loss).  The Insurers, collectively, assigned the claim to Sedgwick Delegated Authority ("SDA"), which assigned a single claim number to the claim, and acknowledged the claim on behalf of all Insurers, on September 1, 2021. (Exhibit "B": Acknowledgement).

### IX.

Belmont presented its claim to all Insurers, collectively and without distinction.  On November 19, 2021, Emanuel Organek, the managing member of Belmont Commons, L.L.C., notified all Insurers that it had retained a public adjuster and demanded that the Insurers provide certain documents.  (Exhibit "C": November 19, 2021 correspondence).

### X.

On February 16, 2022, all Insurers, collectively, through SDA, advised Belmont that the claim fell below the Account Policy deductible.  (Exhibit "D": Below Deductible Letter)

*The Account Policy And*
*Arbitration Agreement*

**XI.**

On August 29, 2021, the Insurers had in effect the Account Policy (Exhibit "E"), which, pursuant to its terms and conditions, provided certain coverages to Belmont relative to the subject property.

**XII.**

The Account Policy includes an Arbitration Agreement (Exhibit "F") at Paragraph C of **Section VII-Conditions**, which requires arbitration of "all matters in difference" between the Insurers and Belmont:

> ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.
>
> Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.
>
> Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.
>
> Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.
>
> The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the

circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

## XIII.

The Account Policy also requires, at Paragraph V of **Section VII-Conditions,** that disputes

regarding the amount of loss must be resolved by arbitration:

SETTLEMENT OF CLAIMS: The amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss, as herein required, is received and accepted by the Companies and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Companies or an amount is determined by binding Arbitration in accordance with the provisions of this Policy. The Companies shall have the option to take all, or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the Proof of Loss herein required.

(Exhibit "G": Settlement Clause).

**XIV.**

Paragraph Y of **Section VII-Conditions** of the Account Policy provides that Belmont may

not file suit against the Insurers before it has complied with all requirements under the Policy:

> SUIT AGAINST COMPANIES: No suit, action or proceeding for
> the recovery of any claim under this Policy shall be sustainable in
> any court of law or equity unless the Insured shall have fully
> complied with all the requirements of this Policy, nor unless the
> same be commenced within twelve (12) months next after the date
> of the loss, provided however, that if under the laws of the
> jurisdiction in which the property is located such time limitation is
> invalid, then any such claims shall be void unless such action, suit
> or proceedings is commenced within the shortest limit of time
> permitted by the laws of such jurisdiction.

(Exhibit "H": Pre-Suit Requirement Clause).

### *Belmont's Suit Against the Domestic Insurers*

**XV.**

Belmont breached its obligations under the Account Policy when it filed suit against only

the domestic insurers in Civil District Court for the Parish of Orleans on August 26, 2022.  (Exhibit

"I": State Court Action).  Belmont deliberately omitted the foreign Insurers (Lloyds Underwriters

and HDI). As discussed below, the State Court Action is a transparent exercise in "artful pleading".

### *Belmont's "Demand" for Arbitration Against All Insurers/Insurers Own Demand*

**XVI.**

Also on August 26, 2022, Belmont issued a "Demand for Arbitration" to all Insurers, both

foreign and domestic.  (Exhibit "J").  As discussed below, the demand does not conform to the

Arbitration Agreement of the Account Policy, and Belmont has effectively retracted the demand.

## XVII.

On September 21, 2022, the Insurers sent to Belmont's counsel the Insurers' own demand for arbitration, pursuant to the dictates of the Arbitration Agreement of the Account Policy (Exhibit "K")

## XVIII.

On October 10, 2022, counsel for the Insurers asked Belmont to confirm that it contests the enforceability of the Arbitration Agreement and does not intend to proceed to arbitration unless a court orders it to do so.  On October 11, 2022, Belmont responded that it will seek a stay of arbitration in favor of litigation, where Belmont will challenge, or "address", the enforceability of the Arbitration Agreement. This correspondence exchange is made Exhibit "L" hereto, *in globo*.

## CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

### *The Convention is Supreme Law of the Land*

## XIX.

The Convention was negotiated and ratified by Congress "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 520, n. 15 (1974); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London,* No. 20-2326, 2020 U.S. Dist. LEXIS 233867, at *10 (E.D. La. Dec. 9, 2020).  Congress also enacted enabling legislation (the "Convention Act"), empowering courts to enforce the Convention treaty.  *See* 9 U.S.C. §§ 201-208.  *Id.* at *10 ("Congress enacted the Convention Act within the Federal Arbitration Act to establish procedures by which federal courts must follow.")  As a ratified treaty of the United

States, the Convention is supreme law of the land.  *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902-03 (5th Cir. 2005); *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427, 429 (5th Cir. 2019).

### The Convention Act Empowers
### This Court to Compel Arbitration

### XX.

9 U.S.C. §206 grants this Court authority to order Belmont to arbitrate:

> A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

### XXI.

In exercising its authority to compel arbitration, the Court is guided by the *strong presumption* in favor of arbitrations that fall under the Convention.  This federal policy is applied with "special force" on Convention arbitrations:

> *Bremen* and *Scherk* establish a strong presumption in favor of enforcement of freely negotiated contractual choice-of-forum provisions. Here, as in *Scherk*, that presumption is reinforced by the emphatic federal policy in favor of arbitral dispute resolution. And at least since this Nation's accession in 1970 to the Convention, . . ., and the implementation of the Convention in the same year by amendment of the Federal Arbitration Act, ***that federal policy applies with special force in the field of international commerce.***

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 638-40, 105 S. Ct. 3346, 3356, 87 L. Ed. 2d 444 (1985) (emphasis added); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 20-102-JWD-SDJ, 2021 U.S. Dist. LEXIS 20042, at *10 (M.D. La.

Feb. 2, 2021) (*Citing Mitsubishi Motors* for a *"*liberal federal policy favoring the enforcement of arbitration provisions, especially in the field of international commerce.")

## XXII.

### *This Case Satisfies All Four Criteria of The Court's Inquiry on a Complaint to Compel Arbitration*

This Court's limited inquiry is based on an evaluation of four criteria:

> In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a **very limited inquiry**.  Accordingly, a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen (*citations omitted*).

*Freudensprung v. Offshore Tech. Servs*., 379 F.3d 327, 339 (5th Cir. 2004) (emphasis added); *McDonnel Grp. LLC v. Certain Underwriters at Lloyd's London*, No. 18-2804, 2018 U.S. Dist. LEXIS 108144, at *9 (E.D. La. June 28, 2018).

## XXIII.

**First Criteria: There is a Written Agreement to Arbitrate**.  An arbitration clause contained in an insurance policy constitutes an enforceable written agreement to arbitrate. *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427, 432 n.8 (5th Cir. 2019); *Sphere Drake Ins. PLC v. Marine Towing*, 16 F.3d 666, 670 (5th Cir. 1994). *Georgetown* at *12-13 (the arbitration clause of the subject policy, identical to the Arbitration Clause at issue in the present litigation, satisfied the requirement of a written agreement to arbitrate).  The Account Policy, and the Arbitration Agreement therein, is a written agreement to arbitrate all matters in difference in relation to the coverages under the Policy.

11

## XXIV.

**Second Criteria: The Agreement Provides for Arbitration in a Signatory Nation**.  The Arbitration Clause in the subject Policy provides for arbitration in New York, which is within the territory of the United States.  The United States ratified the Convention in 1970, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38, *reprinted following,* 9 U.S.C. § 201 (West Supp. 1998).

## XXV.

**Third Criteria:  The Arbitration Agreement Arises from a Commercial Legal Relationship**.  The relationship between the insurer the Insurers and Belmont is clearly a commercial legal relationship. *See Franco's Ath. Club LLC v. Davis*, No. 21-1647, 2022 U.S. Dist. LEXIS 13870, at *8 (E.D. La. Jan. 26, 2022); ("the arbitration agreement arises from a commercial legal relationship  because it is contained in an insurance policy issued to a business"); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-6657, 2018 U.S. Dist. LEXIS 165894, at *4 (E.D. La. Sep. 26, 2018) ("The agreement arises out of Defendant's insurance policy, a commercial legal relationship, issued to Plaintiff.")

## XXVI.

**Fourth Criteria: Numerous Insurers are not American Citizens**.  The Convention requires that at least one of the parties to the arbitration agreement not be a citizen of the United States.  In this case, multiple Insurers are citizens of nations other than the United States:

- Multiple Underwriters at Lloyds, London, are principally citizens of the United Kingdom of Great Britain, including, but not limited to, Syndicates 2987 and 510, which are identified as subscribing syndicates on the Certain Underwriter's at Lloyds, London-Syndicate List included in the Policy.

- HDI Global Specialty SE is a citizen of Germany.

The foreign citizenship of the Underwriters and HDI satisfies the fourth element.  *Franco's Ath. Club, supra,* at *8.

12

*With all Four Criteria Satisfied,*
*All Matters, Including Bad Faith,*
*Must Be Referred to Arbitration*

### XXVII.

The Policy's Arbitration Clause contains a broad delegation clause that requires that the Arbitration Panel, and not the Court, resolve all questions regarding whether specific issues fall within the scope of the Arbitration Clause. The delegation clause provides:

> All matters in difference between the Insured and the Companies in relation (hereinafter referred to as the 'parties') in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an arbitration Tribunal in the manner hereafter set out.

### XXVIII.

"Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 202 (5th Cir. 2016) (*citing Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).) If an arbitration agreement contains a delegation clause, "the motion to compel arbitration should be granted in almost all cases." *Id.* at 202 (5th Cir. 2016). *See also, Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.")

### XXIX.

The delegation clause in question is broad, encompassing "all matters in difference". "Drafting a broad delegation clause has the tendency to create a 'presumption of arbitrability'. covering all claims, disputes and other matters pertaining to the contractual agreement.

*1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 U.S. Dist. LEXIS 233867, at *29-30 (E.D. La. Dec. 9, 2020).  *See also, Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pemex),* 767 F.2d 1140, 1145 (5th Cir. 1985) (When an arbitration clause commits "all matters in difference", or all disputes, to arbitration, "it is difficult to imagine broader general language");  *5556 Gasmer Mgmt. LLC v. Underwriters at Lloyd's, London*, 463 F. Supp. 3d 785, 790 (S.D. Tex. 2020)  ("This Court agrees that *all* means just that—*all*.")

## XXX.

All statutory disputes, including bad faith claims, are delegated to arbitration.  Interpreting an Arbitration Agreement identical to that at issue in this Complaint, this Court held that "issues relative to the determination of whether penalties and fees are warranted pursuant to Louisiana law to the Arbitration Tribunal".  *STMB Props., LLC v. Certain Underwriters at Lloyd's London*, No. 22-2229, 2022 U.S. Dist. LEXIS 156895 at *7.  *See also*, *Georgetown*, *supra*, at *39 (E.D. La. Aug. 31, 2022) ("Thus, the delegation clause in this case refers all disputes, including Plaintiffs' bad faith claims, to arbitration.")

## BELMONT IS EQUITABLY ESTOPPED FROM DODGING ARBITRATION THROUGH ARTFUL PLEADING

## XXXI.

Belmont has "demanded" arbitration from *all Insurers, domestic and foreign*, but has also filed a State Court Action against only the domestic insurers.  Although Belmont, in the State Court Action, has sued the domestic insurers under the individual policy numbers used for internal purposes by each of the insurers on the AmRisc account, there is really only one single policy of insurance issued by the Insurers collectively.  (Exhibit "E").  Belmont has used the internal policy

numbers to conceal the inherently collective nature of the Insurers' actions and the federal question

jurisdiction arising from the Convention.

## XXXII.

This Court has rejected insureds' attempt to use the "separate policy" construction to avoid

enforcement of the Arbitration Agreement:

> Although the insurance policy states that plaintiffs have separate
> contracts with each insurer, there is one insurance policy document
> that sets forth the terms and conditions of the coverage on the risk.
> The operative policy language is identical as to all of the insurers,
> foreign and domestic. . . .

*Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 U.S. Dist.

LEXIS 144291, at *19-21 (E.D. La. Aug. 24, 2018).

### *The Arbitration Clause at Issue*
### *Has Been Interpreted by*
### *The Courts to Extend to*
### *All Insurers on the Account Policy*

## XXXIII.

Courts routinely order arbitration against foreign and domestic insurers alike under the

same Arbitration Clause here at issue when Lloyd's Underwriters and HDI are subscribing

insurers, and generally involving most, if not all, of the same insurers subscribing to the Account

Policy here at issue. *Franco's Ath. Club LLC v. Davis*, No. 21-1647, 2022 U.S. Dist. LEXIS 13870

(E.D. La. Jan. 26, 2022); *Glad Tidings Assembly of God Church of Lake Charles v. Indian Harbor*

*Ins. Co.*, No. 2:21-CV-01009, 2021 U.S. Dist. LEXIS 121625 (W.D. La. June 28, 2021); *Clean*

*Pro Carpet & Upholstery Care, Inc. v. Upper Pontalba of Old Metairie Condo. Ass'n,* No. 20-

1550, 2021 U.S. Dist. LEXIS 30111 (E.D. La. Feb. 18, 2021);  *Georgetown Home Owners Ass'n*

*v. Certain Underwriters at Lloyd's*, No. 20-102-JWD-SDJ, 2021 U.S. Dist. LEXIS 20042 (M.D.

La. Feb. 2, 2021); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326,

2020 U.S. Dist. LEXIS 233867 (E.D. La. Dec. 9, 2020); *Woodward Design + Build, LLC v. Certain Underwriters at Lloyd's London*, No. 19-14017, 2020 U.S. Dist. LEXIS 178799 (E.D. La. Sep. 29, 2020); *St. Theresa Specialty Hosp., LLC v. Indian Harbor Ins.*, No. 19-12126, 2019 U.S. Dist. LEXIS 182461 (E.D. La. Oct. 22, 2019); *Port Cargo Serv., LLC v. Certain Underwriters at Lloyd's London*, No. 18-6192, 2018 U.S. Dist. LEXIS 144291 (E.D. La. Aug. 24, 2018).

### *Belmont Is Equitably Estopped From Avoiding Arbitration With The Domestic Insurers On The Account Policy*

### XXXIV.

In *City of Kenner v. Certain Underwriters at Lloyd's*, No. 21-2064, 2022 U.S. Dist. LEXIS 18621, at *2 (E.D. La. Feb. 2, 2022), the insured argued that it was not required to arbitrate with the domestic insurers:

> Plaintiff argues that "these are actually separate individual policies with separate contracts between the insured and each insurer." (Rec. Doc. 10, at 6). As such, Plaintiff submits, "each policy should be treated as a separate contract for purposes of application of the Convention." *Id.* Because the Convention requires the presence of a foreign citizen, and eight of these Defendants are American citizens, the City therefore contends that those eight cannot force arbitration.

*Id.* at *6. Judge Barbier rejected this argument because, as a matter of law, Plaintiff was equitably estopped from opposing arbitration with the domestic insurers when their alleged conduct and that of the foreign insurers was "intertwined, indeed identical":

> Although the Convention only applies to preempt Louisiana law with regard to the arbitration clause between the City and each of the two foreign Defendants, the City's allegations of interdependent and concerted misconduct by both the signatories to the valid and enforceable arbitration clause and non-signatories suffices to establish equitable estoppel. Thus, compelled arbitration is warranted as to both the foreign Defendants, as signatories, and the domestic Defendants, as non-signatories whose conduct is "intertwined, indeed identical." *Holts v. TNT Cable Contractors,*

*Inc.*, No. 19-13546, 2020 U.S. Dist. LEXIS 37262, 2020 WL
1046337, at *4 (E.D. La. March 4, 2020).

*Id.* at*11. *See also, Pontchartrain Nat. Gas Sys. v. Tex. Brine Co., LLC*, 2018-1249 (La. App. 1

Cir 12/30/20); 317 So. 3d 715, 744 ("Although [Plaintiff] carefully pleaded its claims against these

separate entities, we do not find that the various tortious acts are wholly separate and apart from

each other. . .  [I]t is nearly impossible to differentiate where one entity's fault would end and

another would begin.")

### Belmont's "Artful Pleading"
### Cannot Conceal the Federal Question

### XXXV.

By omitting the foreign insurers from the State Court Action, Belmont has engaged in

"artful pleading" to conceal the fact that the dispute between the parties presents a federal question

providing this Court with jurisdiction under the Convention and 9 U.S.C. §205:

> There are exceptions, however, to the well-pleaded complaint rule,
> in which a court will find that a federal claim is involved as the result
> of federal preemption of the asserted state claim. One such
> exception is known as the artful pleading doctrine, in which the
> court seeks to evaluate a plaintiff's motive for her failure to plead a
> federal case of action. If the court concludes that the plaintiff's
> failure to plead her federal claim was not in good faith, but rather
> was an attempt to conceal the fact that her claim was truly federal,
> the court will allow the removal.

*Aaron v. Nat'l Union Fire Ins. Co.*, 876 F.2d 1157, 1161 (5th Cir. 1989)[1]; *Baudoin v. Robichaux*,

No. 07-1545, 2007 U.S. Dist. LEXIS 106504, at *4-6 (W.D. La. Nov. 14, 2007) (The artful

pleading doctrine "applies where a plaintiff purposefully obfuscates the federal question and

artfully pleads what should be a federal claim in state law terms solely to defeat removal");

---

[1] The Convention does more than preempt state law; it supersedes state law regarding arbitration of claims arising
under the Convention. *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se,* 923 F.3d 427, 431-432 (5th Cir. 2019); *Safety
Nat'l Cas Corp. v. Certain Underwriters,* 587 F.3d 714, 725 (5th Cir. 2009).

*Eitmann v. New Orleans Pub. Serv., Inc.*, 730 F.2d 359, 365 (5th Cir. 1984) ("[C]ourts will not permit rigid application of the well-pleaded complaint doctrine to aid a plaintiff's attempt to circumvent federal jurisdiction.")

## XXXVI.

The Insurers anticipate that Belmont will argue that it is not required to arbitrate with the domestic Insurers (despite having issued an Arbitration Demand to them) because, based on the Petition in the State Court Action, it has not alleged concerted misconduct with the foreign Insurers. This argument would ignore one critical fact.  All alleged rights and claims asserted by Belmont arise from the Account Policy, to which *all* Insurers subscribe, both foreign and domestic. Absent the Account Policy, Belmont would have no cause of action against any of the eleven Insurers.  The Court must look through the artful pleadings to determine if the dispute relates to the Account Policy and, if so, should order arbitration as to all Insurers:

> Basing the arbitrability of an action merely on the legal label attached to it would allow artful pleading to dodge arbitration of a dispute otherwise "arising out of or relating to" (or legally dependent on) the underlying contract. To avoid this contrivance, courts look at the facts giving rise to the action and to whether the action "*could be* maintained without reference to the contract."

*Ford v. Nylcare Health Plans*, 141 F.3d 243, 250-51 (5th Cir. 1998); *Rosbottom v. GTech Corp.*, No. 08-cv-0522, 2008 U.S. Dist. LEXIS 117426, at *11 (W.D. La. Sep. 16, 2008).

## XXXVII.

Although, in its state court Petition, Belmont goes to excruciating lengths to suggest that its cause of action arises from the unrelated acts of nine separate insurers (all coincidentally adjusting the same claim), Belmont is indisputably aware that all Insurers, foreign and domestic, acted collectively under a single Account Policy.  Belmont reported the loss to *all* Insurers and notified *all* Insurers of the appointed of its Public Adjuster.  *All* Insurers, together, acknowledged

Belmont's claim and, collectively, appointed SDA as their claims administrator.  SDA adjusted the claim for the collective Insurers on the Policy.  Again, collectively, *all* Insurers advised Belmont that the claim fell below the deductible.  Belmont had one claim, under a single Account Policy.  Belmont did not have 11 claims.

## XXXVIII.

The state court petition (Exhibit "E"), despite its artful pleading, fails to conceal the concerted alleged misconduct of the Insured.   Belmont alleges that: (1) *all* Insurers "collectively" insured the subject property (*Id.* at ¶ 10); (2) *all* Insurers, without differentiation, placed a valuation of the property (*Id.* at ¶ 24); (3) Belmont reported the loss to *all* Insurers, without differentiation (*Id.* at ¶ 32); (4) *all* Insurers, without differentiation, assigned SDA to handle the claim (*Id.* at ¶¶ 35, 40); Belmont notified the Insurers, without distinction, of its mitigation efforts (*Id.* at ¶ 38); *all* Insurers, without differentiation, failed to object to Belmont's use of contractors (*Id.* at ¶ 39); *all* Insurers, without distinction, caused the property to be inspected on September 27 and 29, 2021, and thereby received proof of loss (*Id.* at ¶¶ 43, 44); Belmont produced documentation, photographs, and videos to the Insurers, collectively (*Id.* at ¶¶ 46, 53, 85); *all* Insurers, without distinction, failed to pay Belmont's property damage, mediation costs, and repair costs (*Id.* at ¶¶ 47, 49, 51, 55); *all* Insurers, without distinction, undervalued Belmont's property damage (*Id.* at ¶ 54); *all* Insurers, without distinction, received proof of loss but failed to tender adequate proceeds (*Id.* at ¶¶ 62, 74, 76); *all* Insurers, without distinction, conducted an unreasonable investigation and improperly failed to pay the claim (*Id.* at ¶¶ 63, 76, 87); *all* Insurers, without distinction, delayed the decision of Belmont's claim (*Id.* at ¶ 65); Belmont has suffered damages from the collective acts of the Insurers, without distinction (*Id.* at ¶ 66); *all* Insurers unfairly and improperly mishandled Belmont's claim (*Id.* at ¶ 69); *all* Insurers, without differentiation, failed to timely pay

Belmont's claim (*Id.* at ¶¶ 71, 72); *all* Insurers, without distinction, manipulated pricing software (*Id.* at ¶¶ 76, 85, 87); *all* Insurers, without distinction, failed to properly calculate profit and overhead (*Id.* at ¶ 76); *all* Insurers, without distinction, are liable to Belmont (*Id.* at ¶ 79); *all* Insurers, without differentiation, acted arbitrarily and capriciously in failing to make timely and adequate payment upon receipt of proof of loss and failing to make a written offer to settle (*Id.* at ¶¶ 85-87); *all* Insurers, without differentiation, engaged in unfair claims handling practices (*Id.* at ¶¶ 92-93); *all* Insurers, without distinction, are liable to Belmont for damages, attorney fees, penalties, (*Id.* at ¶¶ 96-99).

## XXXIX.

Belmont's artifice is made all the more transparent by the discovery propounded to the domestic Insurers, which is included in Exhibit "I".  Despite concealing the existence of the Account Policy throughout the state court Petition, Belmont references repeatedly the "composite insurance policy bearing Account No. 840553", which is the Account Policy (Exhibit "E"), throughout its interrogatories and requests for production of documents.  *See*, Interrogatories Nos. 12, 13, and 14, and Requests for Production Nos. 16 and 17 (in which Belmont specifically demands production of all communications regarding the claim between the domestic Insurers and Lloyds Underwriters and HDI.)  At Request for Production No. 30, Belmont slips up and acknowledges that there is but one operative Account Policy, demanding documents pertaining to "the Policy [singular] with respect to You and/or the other Defendants in the Lawsuit, Certain Underwriters at Lloyd's London, and/or HDI Global Specialty SE."

## XL.

The Demand for Arbitration (Exhibit "J") was issued to *all* Insurers. The Demand specifically references the Arbitration Agreement at Section VII (c) of the single Account Policy

(*Id.* at p. 2), and refers to it as a single "arbitration clause in the policy" (*Id.* at p. 3, bottom). Belmont states, in its Demand for Arbitration, that it seeks $7,071,741.20 from *all* Insurers (*Id.*) The Demand for Arbitration makes a clear allegation of concerted alleged misconduct among the Insurers, without differentiation among the individual insurers or between the foreign and domestic Insurers:

> Claimants complied with all policy provisions and fulfilled all of the obligations thereunder and submitted the claim to insurers. Claimants provided evidence supporting its claim. *See* Exhibit 1 attached hereto and incorporated by reference as if more fully set forth herein. Contrary to their policy obligations, insurers failed and/or refused to pay claimants for the amounts required to perform emergency mitigation and temporary and permanent repairs to the extensive Hurricane Ida damage to the Property. As of the date of this filing, insurers paid nothing towards the claim which does not fairly compensate the extensive damages suffered by claimants.

### XLI.

Belmont is equitably estopped from contesting arbitration with the domestic Insurers.

### DESPITE BELMONT'S "DEMAND FOR ARBITRATION", BELMONT CONTESTS ENFORCEABILITY OF THE ARBITRATION AGREEMENT

### XLII.

Belmont's filing of suit against the domestic Insurers (with artful pleading designed to avoid enforcement of the Arbitration Agreement), before the issuance of a "Demand for Arbitration" to all insurers, demonstrates that Belmont intends to pursue litigation rather than arbitration.

### XLIII.

This was confirmed on October 10, 2022, when the Insurers' counsel conferred with Belmont's counsel, who advised that Belmont would not agree to arbitrate unless under a court

order and that Belmont intended to challenge the enforceability of the Arbitration Agreement, as summarized in the Insurers' counsel's email of October 10, 2022. Exhibit "K".  On October 11, 2022, Belmont responded and confirmed that it intends to "address the enforceability of the arbitration provision in the policy [singular] with the Court." *Id.*

### XLIV.

Belmont's invocation of the Arbitration Agreement in the Demand for Arbitration was insincere, at best, and did *not* comport with the requirements of the Account Policy.  Belmont's Demand for Arbitration failed to comport with the Arbitration Agreement in the following additional, non-exclusive, regards and was, overall, inconsistent with arbitration contemplated by the Arbitration Agreement**:**

A.   Belmont's filing of suit before invoking arbitration did not comply with the Arbitration Agreement's mandate that "[a]ll matters in difference between the Insured and the Companies . . . shall be referred to an Arbitration Tribunal." (Exhibit "F").  Additionally, Belmont was required to submit to arbitration *before* filing suit, as set forth in the Suit Against Companies Clause (Exhibit "G");

B.   Belmont has disregarded the Arbitration Agreement's delegation of all authority regarding discovery to the Arbitration Tribunal by propounding discovery with the Petition in the State Court Action. (Exhibit "I");

C.   Belmont's Demand for Arbitration was silent as to the appointment of arbitrators, contrary to the requirements of the Arbitration Agreement;

D.   Belmont asserts that the Insurers have waived all Account Policy conditions, exclusions, limitations, and requirements, which determination is reserved to the Arbitration Tribunal;

E.   Belmont seeks an award of arbitration costs despite the Arbitration Agreement's provision

that "[e]ach party will pay its chosen Arbitrator, and also bear the expenses of the Arbitration and Umpire equally";

F.     Belmont attempts to exempt from arbitration, and to reserve for litigation, its claims of "bad faith".  The Arbitration Agreement's broad delegation clause submits "all matters in difference" to the Arbitration Tribunal, which includes claims of bad faith.  *STMB Props., LLC v. Certain Underwriters at Lloyd's London*, No. 22-2229, 2022 U.S. Dist. LEXIS 156895 (E.D. La. Aug. 31, 2022); *Figear, LLC v. Velo CityRisk Underwriters Claims*, No. 22-cv-01094, 2022 U.S. Dist. LEXIS 127122, (E.D. La. July 18, 2022); *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 20-102-JWD-SDJ, 2021 U.S. Dist. LEXIS 20042 (M.D. La. Feb. 2, 2021).

## XLV.

In light of the inconsistency of Belmont's Demand for Arbitration with the requirements and provisions of the Account Policy, and Belmont's own declared intention to contest the enforceability of the Arbitration Agreement in court, it is clear that the Arbitration Demand was not a genuine invocation of arbitration, but was a tactical ploy to deny the Insurers their right to arbitration under the Account Policy and the Convention.  This gives rise to a controversy which requires resolution by this Court.

## PRAYER FOR RELIEF

## XLVI.

Wherefore, Certain Underwriters at Lloyd's, London subscribing to Policy No. AMR-73525, Indian Harbor Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, HDI Global Specialty SE, Old Republic

Union Insurance Company, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company pray that this Honorable Court enforce the Arbitration Agreement as to all Insurers, foreign and domestic; dismiss, or in the alternative, stay the State Court Action; and order the parties to arbitration in full conformity with the terms and conditions of the Arbitration Agreement and the Account Policy.

Respectfully submitted,

**ADAMS HOEFER HOLWADEL, LLC**

 */s/ Phillip J. Rew.*
**BRUCE R. HOEFER, JR. (#6889)**
**Email:  brh@ahhelaw.com**
**D. RUSSELL HOLWADEL (#16975) T.A.**
**Email:  drh@ahhelaw.com**
**PHILLIP J. REW (#25843)**
**Email:  pjr@ahhelaw.com**
**HEATHER E. REZNIK (#29175)**
**Email:  her@ahhelaw.com**
**KYLE M. TRUXILLO (#38920)**
**Email:  kmt@ahhelaw.com**
**RICHARD R. STEDMAN, II (#29435)**
**Email:  rrs@ahhelaw.com**
**TYFANNI LAUVE (#39249)**
**Email:  tal@ahhelaw.com**
400 Poydras Street, Suite 2450
New Orleans, Louisiana  70130
Telephone:      (504) 581-2606
Facsimile:      (504) 525-1488
*Attorneys for all Insurers on Account Policy No. 840553: Certain Underwriters at Lloyd's, London, severally subscribing to Certificate No. AMR-73525, Indian Harbor Insurance Company, Lexington Insurance Company, QBE Specialty Insurance Company, Steadfast Insurance Company, United Specialty Insurance Company, General Security Indemnity of Arizona, HDI Global Specialty SE, Old Republic Union Insurance, GeoVera Specialty Insurance Company, and Transverse Specialty Insurance Company*