UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SEVERALLY SUBSCRIBING TO CERTIFICATE NO. AMR-73525, INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY INSURANCE COMPANY, & TRANSVERSE SPECIALTY INSURANCE COMPANY | * * * * * * * * * * * * * * * | CIVIL ACTION NO. 2:22-cv-3874 C/W 2:22-cv-3876 <br><br> JUDGE ELDON E. FALLON <br><br> MAG. JUDGE MICHAEL NORTH <br><br> LEAD CASE NO. 2:22-cv-3874 |
| VERSUS | * * | |
| BELMONT COMMONS L.L.C. D/B/A 925 COMMON AND BELMONT DELAWARE L.L.C. | * * * * | |

\* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| BELMONT COMMONS L.L.C. D/B/A 925 COMMON AND BELMONT DELAWARE L.L.C. | * * * * | CIVIL ACTION NO. 2:22-cv-3874 C/W 2:22-cv-3876 |
| VERSUS | * * * | JUDGE ELDON E. FALLON <br><br> MAG. JUDGE MICHAEL NORTH |
| INDIAN HARBOR INSURANCE COMPANY, QBE SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA, UNITED SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, GEOVERA SPECIALTY INSURANCE COMPANY, & TRANSVERSE SPECIALTY INSURANCE COMPANY | * * * * * * * * * * * * * | MEMBER CASE NO. 2:22-cv-3876 |

\* \* \* \* \* \* \* \* \*

**ORDER AND REASONS**

The Court has before it Petitioners Certain Underwriters at Lloyd's, London's (collectively "Lloyd's") Motion to Compel Arbitration and Stay Litigation, R. Doc. 7, and Motion to Opt Out of the Hurricane Ida Streamlined Settlement Program, R. Doc. 19. Belmont Commons L.L.C. and Belmont Delaware L.L.C. (collectively "Belmont") have responded in opposition. R. Doc 23. Having considered the briefing and the applicable law, and having heard the parties at oral argument, the Court rules as follows.

## I. BACKGROUND

This litigation arises from alleged damage to Belmont's property as a result of Hurricane Ida. R. Doc. 1-9 at 8. Petitioners are a total of eleven insurance companies who jointly subscribe to the insurance policy (the "Policy") obtained by Belmont through Lloyd's. Each of the eleven companies covers a percentage of Belmont's liability under the Policy, which together encompass the single insurance policy. *See* R. Doc. 1-9 at 3–5. Nine of those insurers are domestic to the United States, and two are international. *Id.*

Belmont Commons, a property owner, filed suit first in Louisiana state court against the nine domestic insurers only, claiming entitlement to additional compensation for its Hurricane Ida-related losses under the Policy. *See* R. Doc. 1-9. Petitioners then filed a Complaint to Compel Arbitration against Belmont in this Court, arguing that the terms of the Policy require Belmont to submit this dispute to arbitration rather than to litigate it. R. Doc. 1. Petitioners removed Belmont's state law action to this Court, and the Court consolidated the two related actions. R. Doc. 5.

## II. PRESENT MOTION

Lloyd's now moves the Court to compel Belmont to engage in arbitration and to stay this action. R. Doc. 7. It points to the Policy, which contains an arbitration agreement. *Id.* at 3. The arbitration agreement requires that any matters in difference between the parties related to the Policy be referred to an arbitration tribunal in New York state and that New York law apply to the dispute. *Id*. Lloyd's argues that the arbitration agreement is valid and enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *Id.* at 6–8. Accordingly, it asserts that the Court must stay this action and order Belmont to participate in the arbitration required under the Policy.

### III.   APPLICABLE LAW

The Convention was ratified by Congress "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520, n. 15 (1974). United States courts are vested with the authority to compel parties to arbitrate under the Convention. 9 U.S.C. §206. In exercising its authority to compel arbitration, a court is guided by the strong presumption in favor of arbitrations that fall under the Convention, and this federal policy is applied with "special force" on Convention arbitrations. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985).

A court must compel arbitration if four criteria are met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *City of Kenner v. Certain Underwriters at Lloyd's*, 2022 U.S. Dist.

LEXIS 18621, at *4 (E.D. La. Feb. 2, 2022); *see also Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 685 (E.D. La. 2012).

## IV.     DISCUSSION

The first three criteria are not in contention here. Belmont does not contest that the Policy contains a written agreement to arbitrate disputes arising thereunder. The agreement provides for arbitration in a Convention signatory nation: the United States. The agreement arises out of the Policy, which constitutes a commercial legal relationship between the parties. However, as to the fourth criterium, Belmont argues that because it seeks to litigate only with the nine domestic insurers who are party to the Policy, and not the two international insurers, no party to the agreement is not an American citizen. R. Doc. 23 at 6–8.

In essence, Belmont attempts to subvert the Policy's arbitration agreement and the Convention by selectively bringing suit against only the domestic insurers subscribing to the Policy. But Lloyd's asserts, *inter alia*, that equitable estoppel prevents Plaintiff from objecting to arbitration as to only the domestic defendants. *See City of Kenner v. Certain Underwriters at Lloyd's London*, No. CV 22-2167, 2022 WL 16961130, at *1 (E.D. La. Nov. 16, 2022). The United States Court of Appeals for the Fifth Circuit has held that "application of equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract." *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)). The *Grigson* court explained that "[o]therwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.*

Despite Belmont's attempt to dissect the international insurers from their suit and thereby thwart federal policy in favor of arbitration, its petition for damages filed in state court makes clear that Belmont alleges identical, interrelated misconduct by all insurers in handling its Hurricane Ida claims. *See* R. Doc. 1-9. Courts in the Fifth Circuit have applied equitable estoppel to substantially similar claims against domestic and foreign insurers subscribing to one policy form. *See, e.g.*, *Port Cargo Serv., LLC v. v. Certain Underwriters at Lloyds London,* No. CV 18-6192, 2018 WL 4042874 (E.D. La. Aug. 24, 2018).

*Port Cargo* also involved a single "insurance policy document" common to all of the insurers, which contained an arbitration clause identical to that found in the instant Policy. *Id.* There, the insurers invoked their right to arbitrate, and the plaintiff moved to remand its claims against the domestic insurers alone, arguing that the domestic insurers were not entitled to arbitration under the Convention. *Id.* But the *Port Cargo* court held that estoppel applied under *Grigson*, due to the interdependent and concerted conduct of all insurers in the adjustment of the claim. *Id.* It reasoned that the plaintiff's allegations that the insurers breached the terms of the policy applied to all of the insurers equally and in the same manner, the coverage arguments as to all insurers would be identical, and the plaintiff's evidence as to the damage to the property and the alleged breach of the policy would be identical as to all insurers. *Id.* Accordingly, that court held that "allowing Plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Id.* at 19–20; *see also Francisco v. Stolt-Nielsen*, No. CV 02-2231, 2002 WL 31697700, at *1 (E.D. La. Dec. 3, 2002) (Holding that *Grigson* estoppel applied to compel Convention arbitration with domestic defendants). That reasoning applies in equal force in this

case. Accordingly, if the Court applies *Grigson* estoppel, Belmont is bound by the Policy's arbitration clause to arbitrate with all eleven insurers who subscribe to the Policy, domestic and international.

However, Belmont argues that the Court may not apply *Grigson* estoppel in this case without violating several Louisiana state statutes. R. Doc. 38 at 2–4. Under Louisiana law, estoppel cannot prevail in conflict with the positive written law, but is applicable only in the absence of express law. *See, e.g.*, *Palermo Land Co. v. Planning Commission*, 561 So. 2d 482 (La. 1990); *Frazer v. Day*, 292 So. 2d 870, 874 (La. App. 1 Cir. 1974) (overruled on other grounds). Accordingly, Belmont argues that the application of *Grigson* estoppel is prohibited by La. R.S. § 22:868(A)(1); La. R.S. § 22:868(A)(2); La. R.S. § 22:1892; and La. R.S. § 22:1973.

    a. **La. R.S. § 22:868(A)(1) and (2)**

La. R.S. § 22:868(A)(1) prohibits in an insurance contract "any condition, stipulation, or agreement . . . [r]equiring it to be construed according to the laws of any other state or country." La. R.S. § 22:868(A)(2) prohibits in an insurance contract agreements which "depriv[e] the courts of [Louisiana] of the jurisdiction or venue of action against the insurer." These statutes been interpreted by some Louisiana courts are prohibiting agreements to apply the law of another state and agreements to arbitrate. However, La. R.S. § 22:868(D) specifically states that "[t]he provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." The policy forms of surplus line insurers are not subject to approval by the Department of Insurance. La. R.S. 22:446(a). The insurers at issue in this case are surplus line insurers. Therefore, La. R.S. § 22:868(A)(1) and (2) do not apply to the instant policy, and poses no bar to the application of *Grigson* estoppel.

### b. La. R.S. § 22:1892 and § 22:1973.

La. R.S. § 22:1892 allows policyholders to recover bad faith penalties under certain circumstances, and § 22:1973 allows for the recovery of both bad faith penalties and consequential losses under certain circumstances. Because the instant arbitration clause provides that the arbitration tribunal may not award exemplary, punitive, multiple, consequential, or other damages, Belmont argues that applying *Grigson* estoppel to enforce the arbitration clause would thus contravene express state law.

This argument fails for three reasons. First, Belmont itself contests an interpretation of the arbitration clause's exclusion of exemplary, punitive, multiple, consequential, or other damages applies to exclude the award of "bad faith" or "extracontractual" damages by the arbitration tribunal. R. Doc. 38 at 3, n 5. Belmont argues that the term must be construed against the drafters, so must be interpreted as allowing bad faith and extracontractual damages. If this interpretation is correct, there is no conflict between the arbitration clause and La. R.S. § 22:1892 and § 22:1973.

Second, this argument is far too speculative. It is unclear that La. R.S. § 22:1892 and § 22:1973 are even implicated in this case because it is unclear whether any of the conditions which trigger bad faith or consequential loss damages, such as arbitrary and capricious failure to offer to settle a claim within thirty days, are present. If La. R.S. § 22:1892 and § 22:1973 are not implicated, the instant arbitration agreement cannot conflict with them. The Court declines to hold that the speculative possibility of the availability of bad faith or consequential loss damages under Louisiana law creates such a conflict.

Third and finally, *Grigson* estoppel has been consistently applied by Louisiana courts. *See Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C.*, 2011-0881 (La. App. 4 Cir 12/14/11); *ERG Enters., LLC v. Green Coast Enters., LLC*, 2019-1104 (La. App. 4 Cir 05/13/20); *Saavedra v. Dealmaker Devs., LLC*, 2008-1239 (La. App. 4 Cir 03/18/09) n.5. Having so applied *Grigson* estoppel to enforce similar arbitration agreements, this Court must surmise that those courts did not find that that application was violative of Louisiana state law. Belmont argues that this Court cannot rely on that case law because of Louisiana's civil law, rather than common law, tradition. R. Doc. 38 at 2. However, the Court may rely on *jurisprudence constante* to find that the series of previous Louisiana law decisions applying *Grigson* estoppel is highly persuasive that that such does not violate Louisiana law.

Accordingly, this Court can, and must, apply *Grigson* estoppel to this dispute. Plaintiff is bound to arbitrate his claims against all eleven insurers party to the Policy.

V.   **CONCLUSION**

For the foregoing reasons, Lloyd's Motion to Compel Arbitration and Stay Litigation is hereby **GRANTED**. Because this matter will now be stayed, the pending motion to opt-out of the IDA settlement program is **DENIED AS MOOT**.

New Orleans, Louisiana, this 3rd day of January, 2023.

_____
United States District Judge