UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CERTAIN UNDERWRITERS AT LLOYD'S LONDON ET AL.** | CIVIL ACTION |
| | NO. 22-3874 |
| **VERSUS** | C/W 22-3876 |
| **BELMONT COMMONS LLC ET AL.** | SECTION L (3) |

**ORDER & REASONS**

Pending before the Court is a motion to "lift stay and vacate arbitration order" filed by Plaintiffs, Belmont Commons LLC and Belmont Delaware LLC. R. Doc. 65. The Insurers, eleven insurance companies, oppose the motion. R. Doc. 68. Plaintiff filed a reply, R. Doc. 70, and the Insurers filed a sur-reply, R. Doc. 75. Oral argument on the motion was held on Wednesday, December 18, 2024 at 9:30 a.m. R. Doc. 73. Considering the record, the briefing, the arguments, and the applicable law, the Court now rules as follows.

I.    **BACKGROUND**:

This litigation arises from alleged Hurricane Ida damage. R. Doc. 1-9 at 8. Plaintiffs own property in New Orleans, Louisiana comprised of luxury apartments, retail space, and parking lots. *Id.* at 3. Plaintiffs allege that when Hurricane Ida struck, it had "separate policies of insurance covering the Property" underwritten by nine domestic insurers and two international insurers (collectively, the "Insurers"). *Id.* at 3. All of these policies are contained in a single policy document (the "Policy"). R. Doc. 1-5. Plaintiffs maintain that each Insurer carried a portion of the total risk of the insurance policies: the domestic insurers were collectively responsible for 78% of the named windstorm coverage and the international insurers were responsible for the remaining 22%. *Id.* at 4.

Plaintiffs allege that their property was severely damaged in Hurricane Ida. *Id.* at 8. They aver that they undertook reasonable mitigation efforts and provided the Insurers with notice of

1

loss. *Id.* at 9. Plaintiffs allege that the Insurers prepared an estimate that "grossly underreported the value of the claim and failed to include numerous items of hurricane-related damage to the property." *Id.* at 10. Specifically, Plaintiffs' public adjuster estimated the replacement cost value of the damaged property to be $7,071,741.20 whereas the Insurers estimated the damages at $876,887.55. *Id.* at 12.

On August 26, 2022, Plaintiffs sent an Arbitration Demand to all eleven insurers. R. Doc. 68-1. On the same date, Plaintiffs brought suit in state court against *only* the nine domestic insurers, excluding the two foreign insurers. *Id.* at 2. Plaintiffs asserted claims for breach of contract, bad faith insurance dealing pursuant to Louisiana Revised Statutes §§ 22:1973 and 22:1892, and unfair claims handling practices pursuant to Louisiana Revised Statute § 22:1964. *Id.* at 15-16. The nine domestic insurers removed the suit to this Court on the basis of diversity jurisdiction. No. 23-3874, R. Doc. 1. Additionally, all eleven insurers filed a separate suit against Plaintiffs, arguing that the terms of the Policy require Plaintiffs to arbitrate their disputes with the domestic and foreign insurers alike. R. Doc. 1. The Court consolidated the two related actions. R. Doc. 5.

The Insurers then moved to compel arbitration. R. Doc. 7. They noted that the Policy contains an arbitration clause requiring all matters in dispute between the parties to be referred to an arbitration tribunal in New York. *Id.* The Insurers contended that the arbitration agreement was valid and enforceable under international treaty, the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which generally provides that arbitration agreements in contracts with foreign parties are enforceable.

Plaintiffs opposed the motion. R. Doc. 23. They argued that the Convention only applies where a party to the agreement in question is not an American citizen. Plaintiffs maintained that they had separate contracts with each Insurer because the Policy provides that "[t]his contract shall be construed as a separate contract between the Insured and each of the Underwriters." *Id.* at 7.

2

Accordingly, Plaintiffs conceded that the arbitration agreements were enforceable as to its contracts with the two foreign insurers, because the Convention applies. However, they contended that no foreign insurers were parties to Plaintiffs' nine separate contracts with the domestic insurers. Thus, Plaintiffs contended that the Convention does not apply to require enforcement of the arbitration clauses as to these nine contracts. *Id.* In the absence of the Convention, Plaintiffs pointed to Louisiana Revised Statute § 22:868(A), which invalidates provisions of insurance contracts issued in Louisiana which "[d]epriv[e] the courts of this state of the jurisdiction or venue of action against the insurer." Plaintiffs contended that this statute invalidates the arbitration clauses as to its contracts with the nine domestic insurers.

This Court compelled arbitration based on the doctrine of equitable estoppel. R. Doc. 41. First, as to the two foreign parties, the Court agreed that the Convention required enforcement of the arbitration agreements. As to the domestic insurers, the Court found that these parties could also be forced to arbitrate under the Convention through equitable estoppel. It observed that "[t]he United States Court of Appeals for the Fifth Circuit has held that 'application of equitable estoppel is warranted when [a] signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract.'" *Id.* at 4 (*citing Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000)). The Court found that Plaintiffs alleged such "substantially interdependent and concerted misconduct" by all Insurers, meaning that equitable estoppel required arbitration of all Plaintiffs' claims arising from the policy. *Id.* at 6. Plaintiffs moved for reconsideration twice. R. Doc. 42, 47. The Court denied each motion. R. Doc. 46, 53. However, the Court granted Plaintiffs' motion to certify its decision for appeal. R. Doc. 53.

On appeal, the Fifth Circuit affirmed on two separate bases. First, it held that Louisiana Revised Statute § 22:868(A) does not, in fact, void arbitration clauses in contracts involving

3

domestic parties. *Indian Harbor Ins. Co. v. Belmont Commons*, L.L.C., No. 23-30246, 2024 WL 962376, at *3 (5th Cir. Mar. 6, 2024). The Circuit expressly characterized this holding as an "*Erie* guess" made in the absence of Louisiana Supreme Court guidance on how to interpret § 22:868. *Id.* Second, the Fifth Circuit held that even if it was incorrect and § 22:868 does, in fact, target arbitration clauses, this Court "correctly analyzed and applied the *Grigson* estoppel doctrine" to subject the domestic parties to the Convention. *Id.*

## II. PRESENT MOTION

Plaintiffs now move the Court to vacate its order compelling arbitration pursuant to Federal Rule of Civil Procedure 54(b). R. Doc. 65-1 at 5. Plaintiffs argue that the recent Louisiana Supreme Court case *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co.* changes the law as to *both bases* of the Fifth Circuit's holding in the instant case. 2024-00449, p. 16 (La. 10/25/24), 395 So. 3d 717, 729, *reh'g denied*, 2024-00449 (La. 12/12/24). Accordingly, Plaintiffs argue that this intervening change in the law warrants vacatur of this Court's prior order compelling arbitration. *Id.* The Insurers do not dispute that *Police Jury* abrogates the first basis of the Fifth Circuit's decision in this case regarding La. R.S. § 22:868. R. Doc. 68. However, they contend that the Fifth Circuit's second basis, equitable estoppel, remains good law. *Id.* at 6. Finally, the Insurers contend that even if the Court finds that *Police Jury* changes the law, it should exercise its discretion to stay Plaintiffs' litigation against the nine domestic insurers pending resolution of its arbitration proceeding against the two foreign insurers. *Id.* at 7.

## III. LEGAL STANDARD

Rule 54 provides that district courts "possess[] the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Melancon v. Texaco*, 659 F.2d 551, 552 (5th Cir. 1981). Under such a standard, district courts can be "more flexible, reflecting the inherent power of the rendering district court to afford such relief from interlocutory

4

judgments as justice requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017). Relevant considerations when ruling on a Rule 54(b) motion include "(1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact." *Henry v. New Orleans La. Saints, L.L.C.*, No. 15-5971, 2016 WL 3524107, at *2 (E.D. La. June 28, 2016). Courts may also grant reconsideration when "necessary to prevent manifest injustice." *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998).

## IV.   ANALYSIS

Essentially, Plaintiff contends that both of the Fifth Circuit's bases for compelling arbitration in this case have been abrogated by *Police Jury* and that this Court should vacate its prior Order compelling arbitration. The Insurers disagree, and additionally contend that regardless of the Court's decision on this issue, it should stay any litigation of Plaintiff's claims pending resolution of its arbitration proceeding against the two foreign insurers. The Court summarizes the settled, foundational principles underlying the dispute before taking these issues in turn.

### A. Plaintiffs Can No Longer Be Compelled to Arbitrate with the Domestic Insurers in Light of *Police Jury*.

#### i.   The Foundation of the Dispute

Before proceeding, the Court summarizes the foundational law governing the interaction between the Convention, the Federal Arbitration Act ("FAA"), and state laws that attempt to invalidate arbitration clauses. The Convention is an international treaty which applies only where a foreign entity is a party to the contract at hand.[1] The Federal Arbitration Act is a United States statute, which applies regardless of whether the parties are foreign or domestic. Both the

---

[1] Specifically, the Convention applies if "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004).

5

Convention and the Federal Arbitration Act, in general, provide that arbitration agreements are enforceable.

Facially, it would seem that both of these bodies of law—an international treaty and a federal statute—would preempt contravening state statutes which attempt to invalidate such arbitration agreements. *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 507, (1993) ("Ordinarily, a federal law supersedes any inconsistent state law."). However, another federal statute, the McCarran-Ferguson Act, alters traditional principles of preemption in this context. This statute provides that: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Accordingly, courts have held that "[t]he McCarran–Ferguson Act thus allows state law to reverse-preempt an otherwise applicable federal statute because the McCarran–Ferguson Act does not permit an 'Act of Congress' to be 'construed to invalidate, impair, or supersede' state law unless the Act of Congress 'specifically relates to the business of insurance.'" *Safety Nat'l Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 720 (5th Cir. 2009).

Crucially, the Fifth Circuit has held that state laws attempting to invalidate arbitration agreements in insurance contracts *can* reverse-preempt the FAA but *cannot* reverse-preempt the Convention. *Id.* This is because the FAA meets the McCarran-Ferguson Act's definition of an "Act of Congress" which does not "specifically relate[] to the business of insurance." *Id.* n.1 (citing *American Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006)). However, the court held that the Convention is an "international treaty" rather than an "Act of Congress" and thus does not fall within the scope of the McCarran-Ferguson Act's reverse-preemption provision. *Id.* at 723. The court reasoned that regardless of whether the Convention was self-executing or required implementing legislation, a treaty is fundamentally different from an "Act of Congress"

6

because it is an "international agreement or contract negotiated by the Executive Branch and ratified by the Senate, not by Congress." *Id.* Accordingly, the court found that the McCarren-Ferguson Act does not allow state statutes to reverse-preempt the Convention's directive that arbitration agreements in contracts involving foreign parties are enforceable. *Id.*

The effect of *Safety National Casualty Corp.* is that if the Convention applies to the dispute, it controls and the arbitration agreement is enforceable. However, if the Convention does not apply, state law invalidating arbitration agreements in insurance contracts can reverse-preempt the FAA and control. With that in mind, the Court now turns to the instant dispute. The parties agree that as to the Plaintiffs' contracts with the foreign insurers, the Convention applies and the arbitration agreements are therefore enforceable. However, Plaintiffs contend that in the wake of *Police Jury*, the arbitration agreements in their contracts with the domestic insures are invalid because (1) state law, indeed, operates to invalidate the arbitration clauses and (2) equitable estoppel does not apply to subject the domestic parties to the Convention through the foreign parties' contracts. The Court addresses these issues in turn.

      **ii.**   ***Police Jury* Conclusively Establishes that Louisiana Revised Statute § 22:868 Operates to Invalidate Arbitration Agreements in Insurance Contracts**

In the instant case, the Fifth Circuit held that Plaintiffs' arbitration agreements with the domestic parties are enforceable because Louisiana law does not actually operate to invalidate these agreements. The Fifth Circuit reached this conclusion by making an "*Erie* guess" as to what the Louisiana Supreme Court would hold regarding the effect of Louisiana Revised Statute § 22:868. This guess was wrong, since the Louisiana Supreme Court in *Police Jury* has clearly held that § 22:868 does in fact, operate to invalidate arbitration clauses in insurance contracts. Plaintiffs thus contend that *Police Jury* undermines the Fifth Circuit's ruling. The Court agrees, and the Insurers do not dispute this argument. Nevertheless, because this background informs the parties'

7

arguments regarding equitable estoppel, the Court summarizes Plaintiff's position and the Louisiana Supreme Court's holding in *Police Jury*.

Subsection (A) of § 22:868 invalidates insurance contract provisions "depriving this state of the jurisdiction or venue of action against the insurer." Prior to 2020, the law was settled that § 22:868 operated to invalidate arbitration clauses because such clauses attempted to deprive Louisiana courts of jurisdiction to hear disputes arising from insurance contracts issued in the state. *Belmont Commons, L.L.C.*, 2024 WL 962376, at *3. However, in 2020, the statute was amended by the addition of Subsection (D), which provides that Subsection (A) "shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." *Id.* "Surplus line" insurance policies—high-risk policies such as the one at issue here— are not subject to approval by the Department of Insurance. *Id.* (citing La. R.S. § 22:446(A)). Accordingly, the addition of this provision created uncertainty about whether arbitration clauses in surplus line insurance policies were permissible under Louisiana law.

In the instant case, the Fifth Circuit held that Subsection (D)'s approval of forum or venue clauses indeed operated as a carve-out provision that saved arbitration clauses in surplus line policies from invalidation under Subsection (A)'s general prohibition. *Id.* It reasoned that the Louisiana Supreme Court had characterized arbitration clauses as "a type of venue selection clause" and "a type of forum selection clause." *Id.* at *4 (citing *Hodges v. Reasonover*, 2012-0043, p. 9 (La. 7/2/12), 103 So. 3d 1069, 1076). Thus, the court concluded that Subsection (D) permitted arbitration clauses in surplus line insurance contracts such as the one at issue in this case. *Id.* However, the Fifth Circuit expressly provided that this holding was an "*Erie* guess," made "in the absence of a final decision by the Louisiana Supreme Court." *Id.*

The Louisiana Supreme Court held the opposite in *Police Jury*. 395 So. 3d at 725. It reasoned that "[a]lthough we have previously characterized an arbitration clause as a type of

8

alternative venue, we cannot simplify the definition of an arbitration clause to be synonymous with a forum or venue selection clause under La. R.S. 22:868(D)." *Id.* at 724. It further explained that:

> Forum selection clauses primarily concern the location where parties may pursue litigation. Indeed, the U.S. Supreme Court has held a forum selection clause does not impact jurisdiction. In contrast, arbitration clauses primarily concern the method of dispute resolution, depriving any court of jurisdiction over an action.

*Id.* Accordingly, the Court concluded that "[a]n arbitration clause cannot be categorized so broadly as a forum or venue selection clause when it operates to fully deprive courts of jurisdiction of action." *Id.* at 725. Thus, the court confirmed that "the addition of La. R.S. § 22:868(D) did not implicitly repeal the prohibition of arbitration clauses set forth in Subsection A." *Id.*

Overall, the Fifth Circuit's "*Erie* guess" on this issue has now been proven wrong. The Court agrees with Plaintiffs that *Police Jury* conclusively establishes that § 22:868(A) operates to invalidate arbitration clauses in insurance contracts. Accordingly, the first basis of the Fifth Circuit's decision to compel arbitration in this case has clearly been abrogated. The remaining issue is whether the domestic insurers can be subject to the Convention through equitable estoppel.

### iii. The Domestic Insurers Can No Longer Be Subject to the Convention Through Equitable Estoppel.

The Fifth Circuit has consistently held, in this case and in other cases, that the concept of "equitable estoppel" can operate to make an arbitration agreement between a plaintiff and a foreign insurer binding as to a domestic insurer, and thus enforceable through the Convention. The parties dispute whether the Louisiana Supreme Court's holding in *Police Jury* also abrogates these holdings. The Court summarizes the landscape of the dispute before considering the parties' arguments.

### a. The Fifth Circuit on Equitable Estoppel: *Bufkin Enterprises LLC v. Indian Harbor Insurance Co.*

The Fifth Circuit's clearest expression of its equitable estoppel jurisprudence is found in

*Bufkin Enterprises LLC v. Indian Harbor Insurance Co.*, 96 F.4th 726, 732 (5th Cir. 2024). That case presented the same fact pattern as the instant case: the plaintiff entered "separate contracts" with a group of domestic and foreign insurers. After its property was damaged, the plaintiff sued the domestic insurers who, in turn, demanded arbitration.

The court held that even if the plaintiff's arbitration agreements with the domestic insurers were invalid under Louisiana law, "equitable estoppel" required the plaintiff to arbitrate its claims against the domestic insurers. *Id.* It explained that in *Grigson v. Creative Artists Agency, L.L.C.*, the Fifth Circuit held that the doctrine of "equitable estoppel" can "allow a non-signatory to a contract with an arbitration clause to compel arbitration with a signatory." Equitable estoppel applies "when a signatory to a contract containing an arbitration clause raises allegations of substantially 'interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.'" *Id.* at 730 (citing *Grigson*, 210 F.3d 524, 528 (5th Cir. 2000)).

The court explained how this doctrine applies to the instant context. Crucially, equitable estoppel *does not* operate by making plaintiff's arbitration agreements with the domestic insurers enforceable. Rather, it operates by enforcing the plaintiff's arbitration agreements in its contracts with the foreign insurers—which are invariably valid under the Convention—against the domestic insurers as well. Accordingly, then, "the arbitration agreement between the parties is subject to the Convention *through* equitable estoppel." *Id.* at 733. And because the Convention applies, Louisiana law invalidating arbitration agreements "does not come into play." *Id.*

Furthermore, the *Bufkin* Court found that application of equitable estoppel was appropriate under these facts. It held that the plaintiff's allegations met the test of alleging "substantially interdependent and concerted misconduct" by all the insurers because his petition "[did] not differentiate between the conduct of the foreign and domestic insurers" and because he submitted his claim to all insurers collectively. *Id.* at 731-32. Overall, then, the *Bufkin* Court concluded that

10

through the concept of equitable estoppel, the foreign insurers' Convention-protected arbitration agreements would be enforced against the non-party domestic insurers.

> b. **The Louisiana Supreme Court on Equitable Estoppel:** *Police Jury of Calcasieu Parish v. Indian Harbor Insurance Co*.

In *Police Jury*, the Louisiana Supreme Court expressly disagreed with the Fifth Circuit's application of equitable estoppel to bring domestic insurers into the ambit of the Convention. 395 So. 3d at 729 ("With all due respect, we disagree with the Federal Court's recent per curiam in *Bufkin*."). It observed that "[e]stoppel is not favored in our state's Civil Law System; rather, it is a doctrine of last resort." *Id.* As a disfavored doctrine, the Court observed that "estoppel cannot prevail when in conflict with our state's positive written law." *Id.* And, the Court continued, "[t]he *Bufkin* court failed to acknowledge that Louisiana has positive law" on this issue: § 22:848's prohibition of arbitration clauses in insurance contracts. *Id.* Therefore, the Court reasoned, a domestic insurer "*may not* resort to equitable estoppel under state law to enforce an arbitration clause in another insurer's policy in contravention of the positive law prohibiting arbitration in La. R.S. 22:868(A)(2)." *Id.*

> c. **Discussion**

There is no question that the Fifth Circuit and the Louisiana Supreme Court directly disagree about whether equitable estoppel can be used to subject domestic insurers to the Convention. Accordingly, the essential question the parties dispute is: which of these two courts controls? This question, in turn, hinges on whether the applicable equitable estoppel jurisprudence is a matter of state law, meaning that the Louisiana Supreme Court controls, or a matter of federal law, meaning that the Fifth Circuit controls. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938).

Plaintiffs contend that the Louisiana Supreme Court's decision controls because equitable estoppel is a state law concept and its application to insurance contracts issued in Louisiana is thus

11

ultimately a state law issue. R. Doc. 65-1. Essentially, Plaintiffs contend that the *Bufkin* Court's decision to apply equitable estoppel was nothing more than an "*Erie* guess," just like the one it made regarding the interpretation of § 22:868. *Id.* Now that the Louisiana Supreme Court has spoken, Plaintiffs aver that *Bufkin's* guess is incorrect and no longer good law. *Id.*

The Court agrees with Plaintiff because it finds that the United States Supreme Court has indicated that state law, not federal law, governs the application of equitable estoppel principles. In *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, the Supreme Court held that equitable estoppel is available to allow non-signatories to seek arbitration in a Convention case. 590 U.S. 432, 440 (2020). Specifically, it found that "nothing in the text of the Convention could be read to otherwise prohibit the application of domestic equitable estoppel doctrines." *Id.* This Court acknowledges that the Supreme Court, in this statement and elsewhere in the opinion, uses the term "*domestic*" equitable estoppel principles. The term "domestic" does not, in itself, indicate whether these estoppel principles derive from state or federal law. Thus, on a surface level, it is not immediately apparent that the *Outokumpo* Court addressed the question of which law applies.

However, the Court finds that on deeper analysis, the *Outokumpo* Court clearly contemplated that state principles of equitable estoppel, and not federal ones, apply here. This is because the Court effectively applies and follows an earlier decision in the FAA context—*Arthur Andersen v. Carlise*—which held that state principles of contract law govern the availability of equitable estoppel. In *Arthur Andersen*, the Court found that none of the FAA's provisions "purports to alter background principles of *state contract law* regarding the scope of agreements (including the question of who is bound by them)." 556 U.S. 624, 630 (2009) (emphasis added). Overall, the *Arthur Andersen* Court concluded that "[b]ecause "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . estoppel" such

12

principles were available in an FAA case. *Id.* at 631.

Crucially, the *Outokumpo* Court imports this holding into its decision on the availability of equitable estoppel in Convention cases. In the beginning of its opinion, the Court explains that "Chapter 1 of the [FAA] permits courts to apply state-law doctrines related to the enforcement or arbitration agreements." 590 U.S. at 437. It quotes *Arthur Andersen* for the proposition that "the 'traditional principles of state law' that apply under Chapter 1 include doctrines that authorize the enforcement of a contract by a nonsignatory." *Id.* (citing *Arthur Andersen*, 556 U.S. at 631.) Ultimately, in framing the issue before the Court, it explains, "We must determine whether *the equitable estoppel doctrines permitted under Chapter 1 of the FAA*" would "conflict with the Convention." *Id.* at 439 (emphasis added). That is, the Court expressly describes the issue before it as whether the *same* state-law equitable estoppel doctrines permitted in FAA cases are also permissible in Convention cases. Accordingly, this Court cannot see any basis for construing *Outokumpo* as a departure from precedent holding that state law governs estoppel.

The Insurers argue that there is still room to find that federal common law, rather than state law, applies in the instant Convention context. They note that on remand from the Supreme Court's decision in *Outokumpo*, one Judge on the Eleventh Circuit wrote a concurring opinion arguing that federal common law, not state law, should determine whether equitable estoppel is available to force a non-signatory to arbitrate. *See Outokumpu Stainless USA, LLC v. Coverteam SAS*, No. 17-10944, 2022 WL 2643936, at *6 (11th Cir. July 8, 2022) (Tjoflat, J., concurring). This decision argued that there is a "uniquely federal interest" involved in Convention cases because these cases bear on international treaty obligations and that the application of state law would "frustrate specific objectives" of the Convention by interfering with the standardized application of arbitration agreements. *Id.* (citing *Boyle v. United Techs. Corps.*, 487 U.S. 500, 506–07 (1988)).

The Court is not persuaded by the Insurers' argument. As explained above, the *Outukumpo*

13

decision clearly implicates state contract law estoppel principles. And, the Fifth Circuit has explicitly held that the applicability of state law estoppel doctrines leaves no room for a separate doctrine of federal common law estoppel. In *Crawford Professional Drugs Inc. v. CVS Caremark Corp.*, an FAA case, the Fifth Circuit explained that:

> *Arthur Andersen* instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia,* equitable estoppel if the relevant state contract law so permits. Consequently, prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with *Arthur Andersen*.

*Id.* at 261–62. Accordingly, the court made an "*Erie* guess" whether the relevant state law would allow for a "test for arbitration by estoppel." *Id.* at 260.

Further, the Fifth Circuit has expressly held that *Arthur Andersen* and its progeny applying state estoppel law are instructive as to Convention cases, not just FAA cases:

> It is true that the Convention and the FAA differ in certain important respects. However, in both FAA and Convention cases, courts have largely relied on the same common law contract and agency principles to determine whether nonsignatories must arbitrate, and not law derived from statute or treaty. Consequently, [*Arthur Andersen v.*] *Carlisle* and other cases discussing whether nonsignatories can be compelled to arbitrate under the FAA are relevant for this case governed by the New York Convention.

*Todd v. S.S. Mut. Underwriting Ass'n (Berm.) Ltd.*, 601 F.3d 329, 334–35 (5th Cir. 2010).

Overall, the Court concludes that whether a plaintiff can be compelled to arbitrate with a domestic insurer based on the plaintiff's arbitration agreement with a foreign insurer is a matter of state law, not federal law. *Outukumpo* compels this conclusion. 590 U.S. at 437. Further, the Fifth Circuit has clearly stated that whether a "non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate" through "equitable estoppel" is a matter of "state contract law" and not "federal common law." *Crawford*, 748 F.3d at 262. This precedent is applicable to the instant Convention case. *See Todd*, 601 F.3d at 334–35. Given this Fifth Circuit jurisprudence, the Court will not rely on an Eleventh Circuit concurring opinion to craft an entirely new doctrine

14

of reliance on federal common law. Such a departure from *Arthur Andersen* and *Outukumpo* is simply not supported by Fifth Circuit case law. Accordingly, the Court concludes that equitable estoppel is governed by state law.

This determination dictates the Court's conclusion that the Louisiana Supreme Court, rather than the Fifth Circuit, controls on the issue of estoppel. *See Ward v. State Farm Mut. Auto. Ins. Co.*, 539 F.2d 1044, 1050 (5th Cir. 1976) ("[T]he Supreme Court of Louisiana [] is the ultimate authority on questions of state law."). And the Louisiana Supreme Court, in *Police Jury*, unambiguously rejects the use of equitable estoppel to subject domestic insurers to the Convention. 395 So. 3d at 729. As such, the Court must agree with Plaintiffs that *Police Jury*, which was decided after this Court compelled arbitration and after the Fifth Circuit affirmed its decision, represents an "intervening change in the controlling law." Thus, the Court finds that reversal of its prior decision compelling Plaintiff to arbitrate its disputes with the nine domestic insurers is warranted. *See* Fed. R. Civ. P. 54(b).

### B. Whether the Court Should Enter a Discretionary Stay

Next, the Insurers argue that even if Plaintiff is correct that *Police Jury* means that Plaintiff cannot be compelled to arbitrate with the domestic insurers, the Court should exercise its discretion to stay the litigation pending conclusion of the Plaintiff's arbitration proceedings against the foreign insurers.[2]

### i. The Standard for a Discretionary Stay

District courts have "broad discretion" to "stay proceedings in the interest of justice and in control of their dockets." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "The party seeking a stay bears the burden of justifying a delay tagged to another legal

---

[2] There is no dispute, of course, that the foreign insurers are entitled to a mandatory stay of any litigation proceedings against them, as they are entitled to arbitrate under the Convention. However, Plaintiff has never brought suit against the foreign insurers. Thus, there is no pending litigation that needs to be stayed as to the foreign insurers.

15

proceeding." *Id.* "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248, 255 (1936). Factors the court considers include whether 1) the arbitrated and litigated disputes must involve the same operative facts; 2) the claims asserted in the arbitration and litigation must be "inherently inseparable"; and 3) the litigation must have a "critical impact" on the arbitration. *Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004). Finally, "before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the other case." *Wedgeworth*, 706 F.2d at 545. Ultimately, it is the Court's duty to "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 255.

Each side argues that the balance of equities weighs in their favor. The Insurers contend that "Plaintiffs' dispute against the domestic and foreign insurers arises from the identical operative facts: the alleged damage to Plaintiffs' properties as a result of Hurricane Ida and the Defendants' adjustment of that claim." R. Doc. 68 at 8. And, they argue, allowing Plaintiffs' litigation proceeding against the domestic insurers to move forward will destroy the foreign insurers' right to meaningful arbitration, which is protected by international treaty. *Id.* at 11. Should the litigation proceeding proceed to trial before the arbitration concludes, evidence of the outcome in litigation would, the Insurers argue, unduly influence the outcome of the arbitration proceedings. *Id.*

Plaintiffs, meanwhile, contend that it would be entirely unfair for the Court to stay their litigation against the domestic insurers while they wait indefinitely for the arbitration proceeding to conclude. R. Doc. 70 at 5. They point to their right, guaranteed by the Louisiana Constitution, to access the courts without "unreasonable delay." *Id.* Further, they observe that the suit against the domestic insurers represents a larger portion of their claim, as the domestic insurers took on

78% of the risk compared to only 22% covered by the foreign insurers. *Id.* at 6. Finally, Plaintiffs point out that over three years have already passed since the hurricane damage underlying this suit occurred. *Id.* They aver that while this lawsuit is ongoing, their property sustains further decay and damage. *Id.* Thus, they maintain that waiting on the outcome of an arbitration proceeding to even begin litigating against the domestic insurers would constitute an extreme hardship. *Id.*

The Court acknowledges that this is a close case. The Court is asked to balance the foreign insurer's right to arbitrate meaningfully, which is protected by international treaty, with the Plaintiffs' constitutionally-protected right to litigate against the domestic insurers. Although weighing such diverse interests is difficult, the Court concludes that the balance of hardships weighs against a discretionary stay of the litigation. First, there is no guarantee that the parallel litigation proceeding will, in fact, interfere with the arbitration proceeding. As the Insurers point out, that proceeding has been ongoing for years and may well conclude in a timely manner. Further, there is no guarantee that parallel proceedings will yield inconsistent results. As Plaintiff points out, the proceedings will be governed by different law, as the arbitration is governed by New York law and the litigation by Louisiana law. Thus, any potential differences in outcome may, in fact, be consistent with applicable law.

Finally, and most fundamentally, the Court simply concludes that Plaintiffs would be more drastically harmed than the Insurers by an adverse decision on the entry of a stay. The Court is persuaded by Plaintiffs' explanation that they have been trying to resolve this suit for years while their property remains damaged and decaying. Overall, the Court finds that the inevitable and direct harm caused to Plaintiffs by requiring them to "stand aside" while the foreign insurers arbitrate is more problematic than the speculative possibility that a future decision in this case may unduly influence a future decision in the arbitration proceeding. *Landis*, 299 U.S. at 255.

17

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's motion to Lift Stay and Vacate Arbitration Order is **GRANTED.**

New Orleans, Louisiana, this 17th day of January, 2025.

HONORABLE ELDON E. FALLON